# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

BRUCE CUNNINGHAM,

     Petitioner,

v.                                   Case No. 8:13-cv-2649-VMC-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## ORDER

This matter is before the Court on remand from the United States Court of Appeals for the Eleventh Circuit. On July 24, 2017, this Court denied *pro se* Petitioner Bruce Cunningham's second amended petition for habeas corpus relief under 28 U.S.C. § 2254. (Doc. 83.) Cunningham appealed. The Eleventh Circuit held that, in denying the petition, this Court failed to address one of Cunningham's ineffective-assistance-of-counsel claims. (Doc. 89.) That claim—which both sides refer to as Ground 13(b)—rests on the allegation that Cunningham's trial counsel was ineffective for failing to redact portions of a deposition transcript of alibi witness Mary Walters, which allegedly resulted in the introduction of collateral-act evidence when the transcript was read at trial. The Eleventh Circuit vacated the denial of the petition and remanded for consideration of Ground 13(b). (*Id.*)

On remand, the Court directed Respondent to file a response to Ground 13(b). (Doc. 91.) Respondent filed a response, and Cunningham replied. (Docs. 92, 95.) For

1

the reasons discussed below, the Court concludes that Cunningham is not entitled to relief on Ground 13(b).[1]

## I.    <u>Background</u>

Cunningham was charged in a five-count information with various sexual offenses. (Resp. Ex. 15, pp. 3-5.) Counts One through Three alleged that Cunningham committed lewd and lascivious acts in the presence of children under the age of sixteen. (*Id.*, pp. 3-4.) Counts Four and Five alleged that Cunningham engaged in lewd and lascivious behavior. (*Id.*, p. 4.) The offenses were alleged to have taken place between April 1997 and July 1997. (*Id.*, pp. 3-4.)

Cunningham went to trial on Count Two.[2] This count concerned an incident that took place on June 28, 1997. That evening, three minor children—J.M., C.H., and A.B.—were standing on a street corner in St. Petersburg, Florida. A pickup truck passed by, and J.M. recognized the driver as a man who had publicly masturbated in front of her on two prior occasions. The man drove up the block, exited the vehicle, and looked inside the truck bed. He then opened the driver-side door, leaned against it, and began masturbating in view of J.M., C.H., and A.B. During the two prior incidents, the same man had masturbated in front of J.M. after exiting the same

---

[1] Following the completion of briefing, Cunningham filed a motion to rule, requesting that the Court address Ground 13(b). (Doc. 96.) The Court grants the motion to rule to the extent that this order resolves Ground 13(b).

[2] The remaining counts were severed. A jury subsequently convicted Cunningham of Count One, and the State *nolle prossed* Counts Three through Five.

vehicle—an old, "dirty gray" pickup truck with a "silver toolbox" in the bed. (Trial Tr., pp. 204-07.)

Two days after the June 28 incident, J.M. identified Cunningham out of a photographic lineup as the man who had masturbated in front of her. C.H. was unable to identify any suspect from the lineup, and A.B. identified someone other than Cunningham as the perpetrator. Unlike J.M., however, neither C.H. nor A.B. had seen the suspect before June 28.

The jury also heard testimony about an incident that took place one month after the charged offense. On July 30, Pamela Hernandez and Janet McLaughlin were driving home from a bar in St. Petersburg.[3] Hernandez spotted a pickup truck driven by a man who had publicly masturbated in front of her one week earlier. Specifically, Hernandez had seen the man masturbating next to an old, gray pickup truck at a gas station. At the time, a rag had covered the truck's license plate. On July 30, Hernandez noticed the same truck following a Jeep with "two or three other girls." (*Id.*, p. 267.) At some point, the truck stopped. Hernandez got out of her car, removed the rag from the truck's license plate, and obtained the license plate number. Later that night, the police located the truck at Cunningham's apartment. When Hernandez and McLaughlin arrived at the apartment, they identified Cunningham as the driver of the truck.[4]

---

[3] Hernandez and McLaughlin were adults at the time of this incident.

[4] The trial court ultimately ruled that this collateral-act evidence was admissible to show absence of mistake or accident in relation to the June 28, 1997 incident. On cross examination, Cunningham's trial counsel had asked the victims of the June 28 incident whether the perpetrator could have been

At trial, Cunningham relied primarily on an alibi defense. He presented several witnesses who testified about his whereabouts on the night of June 28. One alibi witness—Mary Walters—was unable to attend the trial. She had moved to California and could not afford to fly to Florida. The trial court ruled that Walters could testify via satellite, but the satellite facilities were unavailable at the time of trial. Thus, Cunningham's trial counsel opted to read portions of Walters' deposition transcript to the jury. As relevant here, the jury heard the following exchange, which took place toward the beginning of the deposition:

> Question: You have been listed as a witness in the case of State of Florida versus Bruce Cunningham. **He is accused of a number of acts of lewd and lascivious conduct between the months of April 1, 1997 through August 1, 1997**. Do you have some knowledge as to Bruce Myers (*sic*) and his whereabouts during those time periods?
>
> Answer: Bruce Cunningham?
>
> Question: I am sorry. Did I say Myers? My mind is in a different place.
>
> Answer: I met him in June.

(*Id.*, pp. 432-33 (emphasis added).)

The jury ultimately convicted Cunningham of Count Two (lewd and lascivious act in the presence of a child under the age of sixteen), and the trial court sentenced him to thirty years in prison as a habitual felony offender. (Resp. Ex. 28, pp. 43-47.) The state appellate court affirmed the conviction but remanded to allow the trial court

---

urinating, scratching himself, or displaying the symptoms of an illness. Thus, the trial court held that the testimony of Hernandez and McLaughlin was admissible to "rebut the possibility of a mistake or an accident on the part of the perpetrator related to the conduct of the young ladies on the charged count in this case." (Trial Tr., p. 457.)

to resolve "a conflict between the written sentencing order and the oral pronouncement." *Cunningham v. State*, 818 So. 2d 685, 686 (Fla. 2d DCA 2002). On remand, the trial court held a hearing but did not receive testimony from Cunningham, his trial counsel, or the "court reporter who had transcribed the original sentencing hearing." *Cunningham v. State*, 873 So. 2d 627, 628 (Fla. 2d DCA 2004). Nevertheless, the trial court "reaffirmed" the thirty-year sentence, "stating that the original judgment and sentence were to stand as originally filed." *Id.* The state appellate court subsequently remanded the case a second time, explaining that the trial court had failed to "follow th[e] [appellate] court's mandate at the hearing." *Id.* After holding an evidentiary hearing, the trial court again found that the written sentencing order accurately reflected the sentence imposed—that is, thirty years' imprisonment. This time, the state appellate court *per curiam* affirmed the sentence. *Cunningham v. State*, 939 So. 2d 100 (Fla. 2d DCA 2006).

Cunningham then sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (Resp. Exs. 20, 24.) The state court denied his claims, and the state appellate court *per curiam* affirmed the denial of relief. (Resp. Exs. 25, 27; *Cunningham v. State*, 118 So. 3d 811 (Fla. 2d DCA 2013).) Cunningham also filed a petition alleging ineffective assistance of appellate counsel under Florida Rule of Appellate Procedure 9.141(d). (Resp. Ex. 10.) The state appellate court denied Cunningham's petition. *Cunningham v. State*, 856 So. 2d 989 (Fla. 2d DCA 2003).

II.    **Standards of Review**

A.    **AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535

U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## B.   Ineffective Assistance of Counsel

As relevant here, Cunningham alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of

counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Cunningham must show that counsel's alleged error prejudiced the defense, because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Cunningham must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt"). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

8

C.     Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of

the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

## III. Discussion

As noted above, the Eleventh Circuit remanded this action for consideration of Ground 13(b) of the second amended petition. Ground 13(b) alleges that trial counsel was ineffective for failing to redact portions of a deposition transcript of an alibi witness, Mary Walters, that was read at trial. Cunningham contends that, because trial counsel failed to properly redact the transcript, the jury heard about "pending charges of lewd and lascivious conduct that they otherwise would not have heard about." (Doc. 72, p. 30.) The relevant portion of the transcript is reproduced below:

> Question: You have been listed as a witness in the case of State of Florida versus Bruce Cunningham. **He is accused of a number of acts of lewd and lascivious conduct between the months of April 1, 1997 through August 1, 1997**. Do you have some knowledge as to Bruce Myers (*sic*) and his whereabouts during those time periods?

(Trial Tr., p. 432 (emphasis added).)

In its supplemental response, Respondent contends that Cunningham failed to exhaust Ground 13(b). The Court disagrees. Proper exhaustion requires a petitioner to "present his claims to the state courts such that they are permitted the opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). "[H]abeas petitioners cannot preserve otherwise unexhausted, specific claims of ineffective assistance merely by arguing that their lawyers were ineffective in a general and

unspecified way." *Id.* Instead, "to preserve a claim of ineffective assistance of counsel for federal review, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice." *Id.*

Here, Cunningham argued in his Rule 3.850 motion that trial counsel was ineffective in presenting his alibi defense. He pointed to several alleged deficiencies in the presentation. Cunningham claimed, among other things, that trial counsel provided ineffective assistance by reading Walters' deposition transcript to the jury "without prior screening." (Resp. Ex. 24, p. 14.) As a result of this oversight, Cunningham argued, the jury heard "harmful testimony concerning other unrelated incidents." (*Id.*, pp. 14-15.) Cunningham then quoted the portion of the deposition transcript in which Walters was told that Cunningham had been "accused of a number of acts of lewd and lascivious conduct between the months of April 1, 1997 through August 1, 1997." (*Id.*, p. 15.)

Cunningham also raised this claim on appeal from the denial of his Rule 3.850 motion. In his initial brief, Cunningham argued that trial counsel rendered ineffective assistance by reading to the jury Walters' "original nonredacted deposition." (Resp. Ex. 29, pp. 21-22.) Cunningham cited the relevant portion of the transcript and asserted that trial counsel's "blunder negated every premise of innocence." (*Id.*, p. 22.) Thus, at both the trial and appellate levels, Cunningham "assert[ed] [his] theory of

relief and transparently present[ed] the state courts with the specific acts or omissions of his lawyer[] that resulted in prejudice." *Kelley*, 377 F.3d at 1344.[5]

Although Cunningham properly exhausted Ground 13(b), he is not entitled to relief because his ineffective-assistance claim fails on the merits. The state court denied all of Cunningham's claims, but it did not expressly address the allegations underlying Ground 13(b). (Resp. Exs. 25, 27.) "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289, 301 (2013). The presumption is rebutted when the evidence clearly shows that the state court "inadvertently overlooked" the federal claim. *Bester v. Warden*, 836 F.3d 1331, 1336 (11th Cir. 2016). In such a case, federal courts review the claim *de novo*. *Id.* at 1337.

Here, even assuming that *de novo* review applies, Cunningham has not shown that he is entitled to relief. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review."). Specifically, Cunningham has not demonstrated that he was prejudiced by trial counsel's failure to redact the relevant portion of the deposition transcript.

---

[5] Notably, in granting a certificate of appealability as to Ground 13(b), the Eleventh Circuit stated that Cunningham had "raised [Ground 13(b)] in his Rule 3.850 motion." (Doc. 87, p. 4.)

To satisfy the prejudice prong under *Strickland*, Cunningham must establish a "reasonable probability that, but for counsel's errors, the outcome at trial would have been different." *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Instead, "counsel's errors [must be] so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Thus, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Id.* at 695-96.

Cunningham has not established a reasonable probability that, but for trial counsel's failure to redact Walters' deposition transcript, the outcome at trial would have been different. First, the relevant portion of the transcript contained only a vague reference to "a number of acts of lewd and lascivious conduct" that Cunningham was "accused" of having committed "between the months of April 1, 1997 through August 1, 1997." (Trial Tr., p. 432.) The transcript included no additional information about the accusations. Notably, the jury had already heard testimony about several "lewd and lascivious" acts Cunningham allegedly committed during that time period,

13

including (1) the three occasions when he masturbated in front of J.M., and (2) the incident when he masturbated in front of Hernandez. Thus, the jury likely believed that the unredacted portion of the transcript referred to incidents about which they had already heard testimony.

Second, it is not "reasonably likely that [redacting the transcript] would have made any difference in light of all the other evidence of guilt." *Thompkins*, 560 U.S. at 390. Most importantly, J.M.—the only victim who had seen Cunningham before the date of the charged offense—positively identified him as the man who masturbated in front of her and her friends on June 28, 1997. During that incident, Cunningham was standing next to an old, "dirty gray" pickup truck. (Trial Tr., pp. 204-07.) Several weeks later, Cunningham masturbated in front of Hernandez at a gas station while standing next to an old, gray pickup truck. In short, given "the totality of the evidence before the" jury, the reading of the unredacted portion of the transcript had, at most, "an isolated, trivial effect" on the "entire evidentiary picture." *Strickland*, 466 U.S. at 695-96.

Third, before the jury heard testimony about the incident involving Hernandez and McLaughlin, the trial court gave a limiting instructing concerning "evidence of other crimes allegedly committed by" Cunningham. (Trial Tr., p. 265.) The court instructed the jury to consider such evidence only "for the limited purpose of proving the absence of mistake or accident on the part of [Cunningham]." (*Id.*) And the court made clear that Cunningham was "not on trial for a crime that is not included in the Information or charging document." (*Id.*) Thus, any prejudice possibly caused by the

14

jury's exposure to the unredacted portion of the transcript "was mitigated by the [trial] court's limiting instruction to the jury." *United States v. Edouard*, 485 F.3d 1324, 1346 (11th Cir. 2007).[6]

In sum, Ground 13(b) fails on the merits because Cunningham has not established a "reasonable probability that, but for counsel's [failure to properly redact the deposition transcript], the outcome at trial would have been different." *Reed*, 767 F.3d at 1261. Because Cunningham "cannot meet the prejudice prong [under *Strickland*]," the Court "need not address the performance prong." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). Accordingly, Ground 13(b) is denied.

It is therefore **ORDERED** that Cunningham's second amended petition (Doc. 72) is **DENIED**. Cunningham's motion to rule (Doc. 96) is **GRANTED** to the extent that this order resolves Ground 13(b). The **CLERK** is directed to enter judgment against Cunningham and to **CLOSE** this case.

## Certificate of Appealability and Leave to Appeal *In Forma Pauperis* Denied

It is further **ORDERED** that Cunningham is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id*. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2).

---

[6] In addition, the prosecutor did not call attention to the relevant portion of Walters' deposition transcript during closing argument.

To obtain a COA, Cunningham must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Cunningham has not made the requisite showing. Finally, because Cunningham is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on February 16, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE